[Kidd *et al.* v. Bates.]

# Kidd *et al. v.* Bates.

*Application for Issuance of Letters Testamentary.*

| 120 | 79 |
| 124 | 673 |
| 120 | 79 |
| 132 | 218 |

1. *Appointment of executors; authority of probate court to determine qualifications of persons nominated in a will; construction of statute.*—Under the provisions of the statute requiring the probate court to issue letters testamentary to the executors named in a will "if they are fit persons to serve as such," (Code of 1896, § 45; Code of 1886, § 2003), the probate court is not vested with the broad discretion to determine who are suitable persons to serve as executors; but the discretion conferred is qualified by the succeeding section, (Code of 1896, § 46; Code of 1886, § 2004); and the court must issue letters testamentary unless the person named as executor in the will is under twenty-one years of age, or has been convicted of an infamous crime, or is not competent to discharge the duties of the trust by reason of intemperance, improvidence or want of understanding, which are the disqualifications, preventing the appointment of such person, enumerated in said section.

2. *Same; same; case at bar.*—Upon an application for letters testamentary by a person named as executor in a will, the probate court has no authority to refuse to issue letters to such person for any other cause than those specified in the statute; and the fact that the person making such application has interests antagonistic and hostile to that of the estate and the legatees under the will, is not one of the disqualifications, enumerated in the statute, (Code of 1896, §§ 45, 46; Code of 1886, §§ 2003, 2004), and therefore, the court has no authority to refuse the issuance of letters testamentary to him.

APPEAL from the Probate Court of Elmore.
Heard before the Hon. CABOT LULL.

The facts of the case are sufficiently stated in the opinion.

GUNTER & GUNTER, for appellants.—The appointment by the testator of an executor is no waiver of the statutory requirement that the person so nominated "shall be fit to serve." It is against the statute and public policy that any man should be inducted into a trust

[Kidd *et al.* v. Bates.]

when there is every reason to believe that he cannot and will not discharge the duties of the position. Under the provisions of section 45 of the Code of 1896, the court is vested with the discretion to determine whether or not the person so nominated in the will is a fit person to serve as executor.—*Winship v. Bass,* 12 Mass. 200; *Drake v. Green,* 10 Allen 124; *Thayer v. Homer,* 11 Metc. 104; *Hussey v. Coffin,* 1 Allen 354; *In re Gleason's Estate,* 41 N. Y. Supp. 418.

Whenever, from any cause, the executor or administrator becomes unable to perform the duties of his trust, he is regarded as being unsuitable and unfit to serve as such executor. This has been expressly decided.—*Carey v. Reed,* 33 Atl. Rep. (Md.) 633. See as specially applicable to this case *Mills v. Mills,* 29 Pac. Rep. (Ore.) 443.

The applicant for the issuance of letters testamentary in the present case is shown by the facts of the case, to be unfit to serve as executor of the will of the testator. *Simpson v. Jones,* 82 N. C. 323; *N. C. R. R. Co. v. Wilson,* 81 N. C. 228; *Armstrong v. Stowe,* 77 N. C. 360; *Kellberg's Appeal,* 86 Pa. St. 129; *Bieber's Appeal,* 11 Pa. St. 157; *Noble v. Moses,* 81 Ala. 530.

Independently of what we have said as to the fitness of the applicant, section 46 of the Code disqualifies any person "who, from intemperance, improvidence, or want of understanding, is incompetent to discharge the duties of the trust. This statute is substantially taken from the New York statute (Civ. Pro., § 2685, subd. 2); and the New York court construes improvidence to refer "to such habits of mind and conduct of a man as to render him generally unfit for the trust in question;" as if he is a gambler, though the most successful of the profession.—*McMahon v. Harrison,* 6 N. Y. 443; *Freeman v. Kellogg,* 4 Redf. 218; *Emerson v. Bowers,* 14 N. Y. 449; *Coope v. Lowerre,* 1 Barb. Ch. 45.

TOMPKINS & TROY, *contra.*—The reading of the statutes of our State governing the issuance of letters testamentary is sufficient to authorize the affirmance of the judgment of the lower court. Section 45 of the Code of 1896 declares that the probate court must issue letters testamentary to the persons named in the will as execu-

[Kidd *et al.* v. Bates.]

tors, if they are fit persons to serve as such. It is clear that if this section ended here, in determining whether or no a person was fit or unfit to exercise the duties of executor, we would have to look to the common law; and it is equally clear that if we look to that law, there is nothing in the objections which would disqualify Bates from acting as executor. There were very few persons disqualified at common law from acting as executors. It may be said, in fact, that no persons were disqualified except those who, by reason of their being idiots and lunatics, were deemed incapable of becoming such because they were not capable of accepting the trust.—Schouler on Executors, §§ 33, 34. But this is not an open question in this State. Section 46 of the Code of 1896 describes who shall be deemed fit persons to serve. It declares that no person shall be deemed a fit person to serve who has been convicted of an infamous crime, or who from intemperance, improvidence, or want of understanding is incompetent to discharge the duties of the trust, or who is under the age of 21 years. The persons here named were not disqualified at common law, except that persons who, by reason of insanity or idiocy, lacked the necessary understanding, were disqualified. The statute, then, amends the common law to the extent that it makes incompetent to act as executors, infants, persons who have been convicted of an infamous crime, and those who, by reason of intemperance or improvidence, are incompetent to discharge the duties of the trust.

All the authorities hold that unless the person named in the will is incompetent or unfit on some ground declared by the statute, then he is entitled to letters testamentary, and in the absence of a statute with few exceptions which the common law recognized, which have been referred to above.—7 Amer. & Eng. Encyc. of Law, pp. 171–176 and notes; *Berry v. Hamilton,* 54 Amer. Dec. 515, and note, 518.

BRICKELL, C. J.—Horatio B. Tulane died in October, 1897, leaving a last will and testament in which Louis A. Bates and Louisa V. Kidd were named as executor and executrix. After the probate of the will

Louis A. Bates made application for letters testamentary, which application was contested by appellants, Louisa V. Kidd and Louis S. Kidd, heirs at law of testator and legatees under the will, who filed objections to the issue of letters testamentary to said Bates, and asked that said application be refused.   The substance of these objections is, that while the testator was in a very weak condition of body and mind, caused by age and disease, and was in the care and under the control and dominion of said Bates, who occupied toward him the relation of confidential agent and companion, transacting much of his business, the latter, by the exercise of fraud and undue influence, induced testator to lend him at various times, without security, large sums of money, aggregating more than $100,000 ; and that subsequently the said Bates induced testator to accept as security for $64,000 of said indebtedness a like amouut of the bonds of a Tennessee corporation called the Tulane Hotel Co., and thereafter, in September, 1897, while testator was at said hotel, still weak in mind and body, and in the care of and being nursed by the said Bates and others acting for him, who excluded from his presence his friends and acquaintances, he was induced by the exercise of fraud and undue influence to execute an instrument by which said $64,000 of bonds were donated to said Tulane Hotel Co., of which corporation Bates was the president, and the entire capital stock of which he owned.   It is further averred that by reason of the facts above stated the said Bates is indebted to the estate in a sum exceeding $100,000, but that he denies that he is indebted to it in any amount, and claims that all the money alleged to have been loaned to him was, in fact, donated to said Tulane Hotel Co., by reason of which adverse claim the interest of Bates is antagonistic and hostile to that of the estate and the legatees under the will, and litigation between Bates and the estate is necessary to determine the fact and amount of said indebtedness, which litigation would be embarrassed by the issue of letters testamentary to the applicant.   To these objections appellee demurred, and the sustaining of the demurrer and issue of letters to him are the only errors assigned.

The first ground of demurrer is too general to be considered, and the others present the single question whether, upon an application for letters testamentary by the person named as executor in the will, the court has authority to refuse to issue the letters to such person for any other causes than those specified in the statute. The statutes affecting the question presented, as found in the Code of 1896, are as follows: Section 45.—"Whenever a will has been admitted to probate in this State, the judge of the court in which the will was probated may issue letters testamentary, according to the provisions of this chapter, to the person named as executors in such will, if they are fit persons to serve as such." Section 46.—"No person must be deemed a fit person to serve as executor who is under the age of twenty-one years, or who has been convicted of an infamous crime, or who, from intemperance, improvidence, or want of understanding, is incompetent to discharge the duties of the trust." Section 48.—"If the person named in the will as the sole executor is, or if all the persons named therein as executors are, from any of the causes enumerated in the second preceding section, unfit to serve as executor or executors, letters of administration, with the will annexed, may be granted on the testator's estate under the provisions of section 53." Section 47 prescribes the form of letters testamentary, and other sections of the chapter provide for the grant of letters of administration with the will annexed, in the event of of the death of the sole or surviving executor, or the renunciation of the right to act by the person named in the will.

The theory of counsel for appellants is, that the words "if they are fit persons to serve as such," contained in section 45, indicate a legislative intent to give a very broad discretion to the court in determining what are causes of disability and who are fit persons to serve as executors, and that section 46 was intended not to define all the causes of disability which should authorize the rejection of persons who apply for letters, but only to limit this discretion to the extent of forbidding the issue of letters to one who was under twenty-one years of age, or who had been convicted of an infamous crime, or who, from intemperance, mprovidence, or want of under-

standing, was incompetent to discharge the duties of the trust. If section 45 stood alone, we would be inclined to adopt the construction contended for, and to declare that any cause which rendered the applicant unfit or unsuitable to serve as executor without detriment to the estate and undue advantage to himself, would justify the refusal to issue letters testamentary to him. And upon this construction we would have no difficulty in determining that the facts alleged, if true, render the applicant for letters an unsuitable person to discharge the duties of the trust, which require him to collect all the debts and other assets of the estate and preserve them for distribution according to the provisions of the will, since his interests are clearly adverse to the estate and antagonistic to the legatees and devisees and others interested therein. The decisions of the courts of all those States the statutes of which vest the court with the power and discretion to determine who are suitable persons to serve as executors, so hold, and the correctness of these decisions cannot be doubted.— *Winship v. Bass*, 12 Mass. 199 ; *Drake v. Green*, 10 Allen (Mass.), 126 ; *Thayer v. Homer*, 11 Metc. (Mass.) 110 ; *Kimbalt's Appeal*, 45 Wis. 391 ; *In re Gleason's Estate*, 41 N. Y. Supp. 418. But the several sections of the Code referred to were adopted at the same time, are *in pari materia*, and must be construed together, and the construction of one, if doubtful, may be aided by a consideration of the words of, and the legislative intent indicated by, the others, and of the evil of the common law intended to be remedied. And a consideration of all the sections and of the common law relating to the subject, which they were intended to modify, leads to a conclusion which is opposed to the construction placed by counsel on section 45. It is a rule of statutory construction that a statute in modification or derogation of the common law will not be presumed to alter it further than is expressly declared. The presumption is that the language and terms of the statute import the alteration or change it was designed to effect, and their operation will not be enlarged by construction or intendment.—*Cook v. Meyer Bros.*, 73 Ala. 583 ; *Webb v. Mullins*, 78 Ala. 113. The rule of the common law was that all persons might be appointed execu-

tors who were capable of making a will. Neither infancy, non-residence, coverture, intemperance, improvidence, ignorance, vice, dishonesty, nor any degree of moral guilt or delinquency, disqualified one for the office. Idiots and lunatics were practically the only classes disqualified, and the rule now prevails generally that courts have no discretion in respect to the issue of letters to the persons nominated in the will, unless such persons are expressly disqualified or such discretion is vested by law, and the person appointed by the will can not be rejected by the court except where the law expressly so provides.—1 Woerner Am. Law of Admin., p. 503, *et seq.;* Schouler Exrs. & Admrs., §§ 32, 33 ; 1 Williams Exrs., (7th Am. ed.), p. 269 ; Redf. on Wills, pt. 3, ch. 2, § 3 ; *Stewart's Appeal,* 56 Me. 300 ; *Re Smith's Appeal,* 61 Conn. 420 ; s. c. 16 L. R. A. 538, and notes. Treating these several sections of the Code as one statute, and construing accordingly, they not only fail to indicate any legislative intent to abrogate this rule of the common law and vest a broad discretion in the court to determine what are causes of disability, but they show that such effect was not within the contemplation of the legislature, and that the only discretion intended to be conferred was that to be exercised in the determination of the existence of those particular causes of disability enumerated in section 46. The evil of the common law intended to be remedied by the statute was, that persons were permitted to serve as executors who were clearly unfit to serve as such without undue advantage to themselves and consequent detriment to the estate. The purpose of the statute was, therefore, not to declare, except indirectly by the process of exclusion, who were fit and competent persons to discharge the duties of the trust, since the common law declared all persons competent except idiots and lunatics, but to enumerate the causes which should render persons incompetent. In so far as it enumerates causes of disability not recognized at the common law, it must be treated as exclusive, containing all the causes which will authorize the rejection of the persons named in the will, and excluding all others, and as leaving the common law rule as to competency and fitness unchanged except in the particulars specified. That this was the intention

[Kidd, et al. v. Bates.]

of the legislature is, we think, made manifest by the provision of section 48 quoted above, which authorizes the grant of letters of administration, with the will annexed, only when the persons named in the will as executors are "from any of the causes enumerated in the second preceding section [§ 46] unfit to serve." The probate court has, therefore, no statutory authority to issue letters of administration with the will annexed unless the person named as executor in the will was under twenty-one years of age, or had been convicted of an infamous crime, or was incompetent to discharge the duties of the trust by reason of intemperance, improvidence, or want of understanding, except in the event of the death of the executor, or his renunciation of the right to act, as provided in sections 51 and 54. This failure on the part of the legislature to confer authority to grant letters of administration with the will annexed, except in the cases mentioned, clearly indicates that no causes of disability which could give rise to the necessity for the grant of such letters, other than those enumerated in section 46, were within the contemplation of the legislature when the act was adopted.

The question presented by the demurrer has been touched upon in two cases considered by this court, but cannot be said to have been adjudicated. In *Williams v. McConico*, 27 Ala. 572, appellant applied for letters of administration on the estate of her deceased husband, who had died intestate, and the application was contested on the ground of her unfitness. The evidence showed that she had been living apart from her husband for a long time previously to his death, and had manifested great animosity towards him, and that she "had funds in her hands belonging to her minor children by a former husband, of whom she was sole guardian when she married Williams. which she would not deliver up on settlement, and which she would hold against any other person offering to administer." In the opinion, which does not discuss the question at length, it was said : "It being established that she was the widow, she was the first person entitled to administer ; and under the law every person is a fit person, unless disqualified by some one of the causes specified in section 1658.

[§ 46, Code 1896.]    Allowing every legitimate inference in favor of the contestants upon the evidence offered by them, it is clear that it did not establish any ground of unfitness covered by the section of the Code to which we have referred." In *Bingham v. Crenshaw*, 34 Ala. 683, it was held that previous intermeddling with the effects of the estate by the applicant did not, *per se*, disqualify him, but the court refused to decide "whether there are disqualifications for the office of administrator other than those enumerated in section 1658 of the Code," [§ 46, Code 1896], and referred to the case of *Williams v. McConico, supra*. Our statute is a substantial copy of the New York statute, and is very similar to that of California.    In the latter State section 1349 of the Code of Civil Procedure authorizes the issue of letters testamentary to the persons named in the will as executors "who are competent to discharge the trust," and section 1350 is the same as our section 46, except that it adds to the causes of disability therein enumerated incompetency through want of integrity.    In the case of *In he Bauquier's Estate*, 88 Cal. 302, the application for letters testamenatry was contested on the ground that the applicant had, by the exercise of fraud and undue influence, induced the testator, in his lifetime, to turn over to him more than $12,000 in money and property, and that he claimed adversely to the estate to be the owner of the money and property thus fraudulently obtained.    The court held that the statute contained the only causes of disability which could authorize the rejection of the applicant, and that the objections to the granting of the application must be such as to show that the applicant was incompetent upon some one of the grounds specified in the statute.    In the case of *In Re Gleason's Estate*, 41 N. Y. Supp. 418, a petition was filed for the removal of an executor on the ground that he claimed the benefit of a contract between himself and the testator, as to which there was strong evidence that the testator was of unsound mind at the time of its execution, and by which the executor secured great pecuniary advantage to the detriment of the estate.    The court held that such conduct on the part of the executor did not render him incompetent or disqualified within the meaning of subdiv. 1 of section 2685 of the Code of Civil Procedure,

which specifies the causes of disability, but that his continuing to claim the benefits of the contract was ground of removal under sub-div. 2 of said section, which enumerates, among other causes of removal, unfitness for the due execution of the office by reason of his "having wasted or improperly applied the money or other assets in his hands, or invested money in securities unauthorized by law, * * * * * or by reason of other misconduct in the execution of his office, or dishonesty." Other decisions of the New York court indicate that the courts, in determinining what are gounds for the refusal to grant letters testamentary or of administration, must be governed by fhe statute.—*Emmerson v. Bowers*, 14 N. Y. 449 ; *Coope v. Lowerre*, 1 Barb. Ch. 45 ; *Coggshall v. Green*, 9 Hun 471 ; *In re Manley's Estate*, 34 N. Y. Supp. 258. See also *Berry v. Hamilton*, 12 B. Mon. (Ky.) 191 ; *Re Smith's Appeal*, 61 Conn. 420. The statutes of these States being so similar to ours, the construction placed upon them is entitled to consideration and weight in construing our own ; and as it coincides with the result of our independent investigation of the question, we adopt it as the proper construction of sections 45 and 46 of the Code of 1896. It results that the facts alleged do not show any legal cause of disability, nor any ground for the refusal to issue letters to appellee, and the demurrer was, therefore, properly sustained. Whether the question of appellee's liabiilty to the estate by reason of the facts alleged can be adjudicated, notwithstanding the issue of letters constituting him executor, and if so in what manner and by whom his liability can be enforced, we need not and do not now decide, but refer to the following authorities bearing on the question : *McGregor v. McGregor*, 35 N. Y. 220 ; *Smith v. Lawrence*, 11 Paige, 206 ; *In re Gleason's Estate*, 41 N. Y. Supp. 418.

Let the decree of the probate court be affirmed.